# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| JOSEPH F. CLIPSE,<br>　　　　　Appellant, | DOCKET NUMBER<br>AT-0752-14-0178-I-1 |
| 　　　　v. | |
| DEPARTMENT OF HOMELAND<br>　SECURITY,<br>　　　　　Agency. | DATE: September 30, 2015 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

E. Michael Ruberti, Esquire, Saint Simons Island, Georgia, for
　the appellant.

Diane Z. Buchli, Glynco, Georgia, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which affirmed the agency's action removing him for failure to follow a written directive and lack of candor. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2 The appellant timely filed an appeal of the agency's action removing him from the position of Lead Law Enforcement Specialist (Driver Instructor), GS-1801-13, with the Department of Homeland Security, Federal Law Enforcement Training Center (FLETC), in Glynco, Georgia, effective November 5, 2013. Initial Appeal File (IAF), Tab 1, Tab 3, Subtab 4a. The appellant was the lead instructor in the Driver and Marine Division (DMD). *Id.* He was removed on grounds of failure to follow a written directive and lack of candor. *Id.*, Subtabs 4b, 4g at 1-12. These charges arose after the agency investigated allegations that he had fraternized with three female students and a female intern between 2007 and 2013 in violation of agency policy.[2] *See id.*, Subtab 4e at 4-17, Subtab 4g at 217-604. On appeal, the administrative judge

---

[2] FLETC Directive and Manual 67-31, "Fraternization Between Center Staff and Students," prohibits personal relationships and certain forms of social contact between FLETC staff members and students unless approved by an appropriate official. IAF, Tab 3, Subtab 4g at 71-87. Fraternization is defined as "any social contact between staff members and students on or off FLETC property that is not required to further the training mission." *Id.* at 75.

sustained both charges and found that the agency properly exercised its managerial discretion in imposing the penalty of removal. IAF, Tab 32, Initial Decision (ID) at 1, 9-34. The administrative judge also found that the appellant failed to prove either of his two affirmative defenses: (1) that the charges were barred by laches; or (2) that the agency violated his right to due process because some specifications underlying the charges were insufficiently specific. ID at 34-36. The administrative judge affirmed the removal action. ID at 36.

<u>The appellant did not establish that the administrative judge made erroneous credibility determinations and findings of fact.</u>

¶3    The appellant argues throughout the petition for review that the initial decision contains numerous factual errors and that the administrative judge erroneously determined that the women with whom he allegedly fraternized were credible witnesses. Petition for Review (PFR) File, Tab 1 at 7-11, 12-17, 19-21, 25-27. The Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The Board may overturn an administrative judge's demeanor-based credibility determinations when they are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole. *Faucher v. Department of the Air Force*, 96 M.S.P.R. 203, ¶ 8 (2004). To resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version she believes, and explain in detail why she found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other

evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987).

¶4    The four women with whom the appellant allegedly fraternized, and whose credibility he now challenges, are:  A.N., a Special Agent with the U.S. Customs and Immigration Enforcement (ICE), IAF, Tab 3, Subtab 4g at 3, 9, 242-43; M.V., a Senior Special Agent with the Naval Criminal Investigative Service, *id.* at 3, 225-26; Student X, a Ranger with the Bureau of Land Management, *id.* at 2, 222-24; and R.M., a student intern at the facility, *id.* at 7, 9-10, 218.  The appellant also challenges the administrative judge's finding that witness E.M. testified credibly.  PFR File, Tab 1 at 11-12; ID at 20.  E.M., an ICE Special Agent, was A.N.'s roommate during training and corroborated her testimony.[3] IAF, Tab 3, Subtab 4g at 245; ID at 18-20.

¶5    The appellant has not shown the administrative judge's findings of fact are incomplete, inconsistent with the weight of the evidence, or that they fail to reflect the record as a whole.  *See Faucher*, 96 M.S.P.R. 203, ¶ 8.  To the contrary, the administrative judge identified the material issues of fact and law, summarized the evidence, resolved issues of credibility using the *Hillen* factors, and included her conclusions of law and legal reasoning, as well as the authorities

---

[3] The appellant additionally challenges the administrative judge's finding that two other witnesses testified credibly: K.M., a Special Agent with the agency's Office of Professional Responsibility, and B.B., DMD Division Chief from 2011 to 2012.  PFR File, Tab 1 at 22-23; ID at 28-29.  Based on their testimony, the administrative judge concluded that a 2012 investigation regarding fraternization with student interns had placed the appellant on notice that the agency's fraternization policy also applied to student interns.  ID at 28-29.  The appellant argues that the agency submitted no documentary proof that he had discussed FLETC Directive 67-31 with either witness. PFR File, Tab 1 at 22-23.  Although the administrative judge credited the testimony of K.M. and B.B., ID at 29, the record also shows that the appellant received training regarding the directive in April 2006 before assuming his duties at FLETC.  IAF, Tab 3, Subtab 4g at 492, 630, 659-60.  FLETC Directive 67-31 clearly prohibits most social contact with student interns.  *Id.* at 75.  The record additionally shows that the appellant acknowledged re-reading FLETC Directive 67-31 in November 2011 and February 2013.  *Id.* at 441, 443.

on which that reasoning rests in a detailed initial decision. *See Spithaler v. Office of Personnel Management*, [1 M.S.P.R. 587](#), 589 (1980); *see also Hillen*, 35 M.S.P.R. at 458. The appellant, for example, asserts that A.N. is not a credible witness because she changed her story during the investigative process and her hearing testimony was either uncorroborated by the documentary evidence in the record, or such evidence was fabricated to support her testimony. PFR File, Tab 1 at 7-11, 12-17, 25-27. The administrative judge, however, considered that A.N. only reported the appellant's behavior when approached by investigators from the Office of Professional Responsibility, and that she had not independently filed any complaint against him. ID at 20. The administrative judge found A.N.'s demeanor to be "straightforward," even while testifying about "admittedly embarrassing facts." *Id.* The administrative judge noted that A.N. lacked any discernable motive for fabricating allegations against the appellant, especially given that her testimony potentially put her own law enforcement career at risk. *Id.* The administrative judge further found that A.N.'s testimony was corroborated by that of E.M., who testified that she learned of the appellant's affair with A.N. about 6 months after their graduation from FLETC, and that she had no motive to harm the appellant's reputation. *Id.*

¶6      In contrast, the administrative judge found the appellant's version of events to be "so inherently improbable it renders his testimony not credible." *Id.* The administrative judge noted as particularly improbable the appellant's claim that A.N. anonymously pursued him by text and telephone for months, only revealing herself as his admirer after she graduated from FLETC training. ID at 20-21. Regarding the appellant's demeanor while testifying, the administrative judge stated that she "came away with the impression that he would change his story as necessary to further his position." ID at 22. The administrative judge also identified significant differences between a May 3, 2010 email message that A.N. submitted and a copy of the same message that the appellant submitted. ID at 21-22; *compare* IAF, Tab 3, Subtab 4c at 13, *with* IAF, Tab 26, Ex. 8. She

observed that the appellant's version of the message appeared to have been edited to eliminate any references to a relationship between A.N. and the appellant while A.N. was a student at FLETC.[4] ID at 21-22. The administrative judge considered other documentary evidence that the appellant asserted supported his testimony, but after weighing this evidence in light of all the circumstances, she found that the agency's version of events was more likely to be true than that of the appellant. ID at 22-23. The administrative judge similarly treated testimony from the other women with whom the appellant fraternized, making demeanor-based credibility assessments and carefully weighing the testimony with other record evidence.[5] ID at 20, 24, 27-28, 30-31.

¶7      In summary, we find no error in the administrative judge's determination that the appellant's testimony was less credible than that of four women, three of whom might have harmed their careers or significant relationships by making potentially embarrassing personal admissions. These women worked for different Federal agencies, did not know one other, were from different geographic locations, and were in different training programs at FLETC when the fraternization occurred. Their accounts of encounters with the appellant spanned

---

[4] The administrative judge found similar alterations in text messages that the appellant submitted to support his allegations regarding his contacts with R.M. She opined that the appellant "purposefully inserted various self-serving texts into the log to show that [R.M.] was the aggressor." ID at 27; *compare* IAF, Tab 3, Subtab 4c at 14-51, *with id.*, Subtab 4f at 1-17. On review, the appellant asserts that R.M.'s texts were incomplete or inaccurate, whereas a human resources specialist visually verified his own texts in his cellular telephone. PFR File, Tab 1 at 19-21. He also claims that texts that were redacted from R.M.'s text log "could have supported [his] side of the story." *Id.* at 21. The appellant's argument is misleading. The administrative judge considered only the texts shared by both persons, and she concluded: "[M]ost of the text messages involved playful flirtatious banter and were certainly not training related …. Obviously, this is not the type of social contact allowed by agency policy." ID at 26.

[5] The appellant objects to a finding that M.V. testified credibly, in large part because he believes it is impossible to "observe the candor and demeanor of a witness when they are viewed from a TV monitor and are wearing headphones." PFR File, Tab 1 at 19. The Board has found such arguments unavailing. *See, e.g.*, *Thompson v. Department of the Army*, 122 M.S.P.R. 372, ¶ 21 (2015).

several years, yet these accounts are quite similar. Moreover, the appellant appears to have altered corroborating evidence regarding two of the women to support his version of events. We thus defer to the administrative judge's credibility determinations. Because the administrative judge considered the evidence as a whole, drew appropriate references, and made reasoned conclusions, we find no reason to disturb her findings. *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987).

The appellant did not establish that the agency denied his due process rights.

¶8    On review, the appellant reiterates his arguments that some specifications of the charges -- specifications 2 and 3 of charge 1, and specifications 1 and 2 of charge 2 -- are impermissibly vague, thus violating his right to due process. PFR File, Tab 1 at 4. These specifications largely involve events that occurred in 2007 and 2008. IAF, Tab 3, Subtab 4g at 1. The appellant asserts that "[t]he Notice of Proposed Removal did not give specific times, dates or locations of the alleged offenses of fraternization . . . [and] failed to provide [him] with the opportunity to make an informed reply." PFR File, Tab 1 at 4. He also argues that specific witnesses testified to matters of which he was unaware and it was impossible to prepare for their testimony. *Id*. at 5-6, 13.

¶9    The appellant's arguments are unavailing. As the administrative judge correctly explained, the agency provided "a great deal of specific information [that] the appellant could have addressed," and the "agency produced a voluminous amount of investigatory documents and [reports of investigation] upon which it relied." ID at 35-36; IAF, Tab 3, Subtabs 4e, 4g. The agency even conducted a secondary investigation when the deciding official deemed it to be necessary for the purpose of confirming or refuting information in the appellant's response. IAF, Tab 3, Subtab 4e. As for his ability to respond to unexpected witness testimony, the appellant was represented by counsel, and he has not

alleged that he was denied the opportunity to conduct discovery that would have adequately prepared him for the hearing.

The appellant did not establish that the charges were stale or barred by laches.

¶10    The appellant reiterates his argument that Charge 1, Specifications 2, 3, and 4, and Charge 2, Specifications 1 and 2, were stale because they were based on events that occurred as early as 2007.  PFR File, Tab 1 at 4, 7-8, 13, 25-26.  He asserts that sustaining these specifications prejudiced him "due to the fact [that] memories have faded, phone/text records are unavailable, witnesses are gone, [there are] no hotel/store records, no surveillance videos, no instructor schedules, etc."  *Id.* at 4.

¶11    The Board will consider "stale charge" claims as raising the equitable defense of laches, which bars an action where an unreasonable delay in bringing the action has materially prejudiced the subject of the action.  *Pinegar v. Federal Election Commission*, 105 M.S.P.R. 677, ¶ 25 (2007).  A delay in investigating allegations or initiating disciplinary action against an employee may constitute procedural error, if a law, regulation or agency policy requires that allegations be investigated and/or disciplinary action be proposed or taken within a certain time period.  *See, e.g.*, *Salter v. Department of the Treasury*, 92 M.S.P.R. 355, ¶ 8-9 (2002) (finding that, in a performance-based action brought under 5 U.S.C. Chapter 43, a 13-month delay between the notice of proposed removal and the removal decision violated the applicable statutory time limit, but the appellant did not show he was harmed by the error).

¶12    Here, the appellant has not shown that the delay was unreasonable, nor has he shown that he was prejudiced.  As the administrative judge explained, the agency first became aware of the 2007 and 2008 incidents in 2013, when investigating R.M.'s complaint.  ID at 34-35.  The administrative judge found that when the agency learned that the appellant may have fraternized in the past with persons other than R.M., it promptly investigated the allegations and initiated the disciplinary process.  *Id.*  The appellant has offered no evidence that the agency

delayed in initiating either its investigation or the subsequent disciplinary action. The agency also turned over to the appellant the evidence upon which it had relied during the advance notice period. IAF, Tab 3, Subtabs 4e, 4g. The appellant's argument is thus unavailing.[6]

<u>The appellant has not established that the deciding official failed to consider the relevant factors or that the penalty was unreasonable.</u>

¶13    The appellant argues that the deciding official erred when analyzing the *Douglas* factors. PFR File, Tab 1 at 27-28; *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). His argument specifically pertains to the deciding official's consideration of email messages he sent to M.V. the day after she graduated from FLETC, when his interactions with her would have no longer been restricted. PFR File, Tab 1 at 27-28. Even if the deciding official erroneously considered those messages, as the appellant claims, PFR File, Tab 1 at 28, the record nevertheless shows that he carefully weighed all of the relevant factors pursuant to *Douglas*, IAF, Tab 3, Subtab 4b. Additionally, the specification of charge 1 that pertains to M.V. was but one of the five sustained specifications. Even if we were to eliminate that particular specification, we find the charge would have still been sustained. *Burroughs v. Department of the Army,* 918 F.2d 170, 172 (Fed. Cir. 1990).

<u>The appellant has not established that the administrative judge was biased.</u>

¶14    Finally, the appellant argues that the administrative judge was biased against him. PFR File, Tab 1 at 4-5. He explains that, at the hearing, the administrative judge stopped his attorney from asking one of the women with whom he fraternized if she had told her husband about her alleged history of extramarital affairs. *Id.* at 4-5, 16. The appellant asserts that the administrative

---

[6] The appellant added this defense more than 5 months after filing his appeal. IAF, Tab 10.

judge told his attorney that he could "take it up in the PFR" if he disagreed with the ruling. *Id.* at 4.

¶15 An administrative judge's decision to stop a line of questioning falls within her considerable discretion regarding the conduct of the case and development of the record. An administrative judge has wide discretion under 5 C.F.R. § 1201.41(b)(8), (10) to exclude witnesses where it has not been shown that their testimony would be relevant, material, and nonrepetitious. *Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985); *cf., e.g.*, *Special Counsel v. Rivera*, 61 M.S.P.R. 440, 443-44 (1994) (determining that no harmful error was committed in limiting the questioning of an agency witness regarding matters unrelated to the questions before the Board). The appellant has not explained how the administrative judge's ruling here represents an abuse of discretion. He has not shown, for example, that the ruling affected his ability to defend himself against the agency's charges or to assert his affirmative defenses. Similarly, he has not shown how testimony about the witness's alleged marital indiscretions with other persons would be material to the issue of whether he committed the charged conduct or whether the agency erred in taking action against him.

¶16 The appellant also has not raised any matter that would call into question the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). He likewise has not explained how the administrative judge's reasonable exercise of discretion evidences "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). He also failed to support his allegations of bias with an affidavit, as the Board requires. *Lee v. U.S. Postal Service*, 48 M.S.P.R. 274, 280-82 (1991). We find that the appellant's argument

of bias is unavailing, and for all of the reasons stated above, we affirm the initial decision.[7]

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

> United States Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

---

[7] The appellant also asserts that the Board should ignore the agency's response to his petition for review because the agency quoted a superseded version of 5 C.F.R. § 1201.115.  PFR File, Tab 4 at 4.  This argument is unavailing.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.